THE LOUISVILLE MANUFACTURING COMPANY, PLAINTIFF IN ERROR, v. MICHAEL WELCH.

The following guaranty, viz. " I hereby guaranty the payment of any purchases of bagging and rope which Thomas Barrett may have occasion to make between this and the 1st of December next," extends the liability of the guarantor to purchases upon a reasonable credit, made anterior to the 1st of December, although the time of payment was not to arrive until after that day.

The vendor was not bound to give immediate notice to the guarantor of the amount furnished, or the sum of money for which the guarantor was held responsible. It was sufficient to give this notice within a reasonable time after the transactions were closed, and the question what was a reasonable time was a question of fact for the jury.

If the principal debtor be insolvent at the time when the payment becomes due, even this notice is not necessary, unless some damage or loss can be shown to have accrued to the guarantor in consequence of his not receiving such a notice. And in no instance, in case of a guaranty, will the guarantor be exempt from liability for want of the notice, unless loss or damage is shown to have accrued as a consequence.

But when a party intends to avail himself of the guaranty by making sales on the faith of it to the person to whom it is given, such party must give notice, within a reasonable time, to the guarantor, of his acceptance and intention to act on it.

Where the guarantor took defence upon the ground that he had before notice given up securities belonging to the receiver of the guaranty which would have made him whole, the time of his doing this should have been given to the jury as an essential ingredient for their judgment upon the question whether or not he had received reasonable notice of his liability.

The admission of the guarantor, when called upon for payment, did not conclusively bind him as a matter of law, because it may not have been made with a full knowledge of all the facts in the case. It was therefore properly left to the jury to decide whether so made or not.

THIS case was brought up, by writ of error, from the Circuit Court of the United States for the District of Louisiana.

The Louisville Manufacturing Company was incorporated by an act of the legislature of Kentucky, and was domiciliated and transacting business in that State.

On the 3d of May, 1845, Michael Welch gave to one Thomas Barrett the following letter of credit, viz. : —

" I hereby guaranty the payment of any purchases of bag-
39 *

ging and rope which Thomas Barrett may have occasion to make between this and the 1st of December next.

M. WELCH.

"*New Orleans, 3d May,* 1845."

This letter of credit was deposited by Barrett with the house of Worsley, Forman, & Kennedy, the factors of the Louisville Manufacturing Company, who made sundry sales of bagging and rope to Barrett upon the following credits, viz.: —

Up to the 22d July, 1845, and on that day, the sales of bagging and rope by plaintiffs to Barrett amounted to $891.32, for which, on that day, Thomas S. Forman, agent of plaintiffs, drew a bill on Barrett, to the order of the Louisville Manufacturing Company, due and demandable on the 20th of December, 1845, which bill was accepted by Barrett.

On 28th August, 1845, Barrett drew on himself, and accepted a bill for $605.07, to the order of the plaintiffs, due 10th January, 1846.

On the 18th September, 1845, Barrett drew on himself, and accepted a bill for $531.50, to the order of the plaintiffs, due 15th January, 1846.

On the 1st December, 1845, Barrett drew on himself, and accepted a bill for $433.08, to the order of plaintiffs, due on the 20th January, 1846.

The first-named bill for $891.32 was not protested, having been withheld from the protest, at the instance of Barrett. The other three bills were protested at maturity.

The circumstances which occurred, prior to the institution of the suit, are stated in the evidence given upon the trial, which was made a part of the bill of exceptions.

On the 1st of August, 1847, the Louisville Manufacturing Company brought an action, by filing a petition against Michael Welch, in the Circuit Court of the United States for the District of Louisiana, which came on for trial in May, 1848. The following is the evidence which was given.

"And afterwards, to wit, on the 11th day of May, 1848, the testimony of W. Chambers was offered in evidence.

"I was a clerk in the houses of Worsley & Forman, Worsley, Forman, & Kennedy, and Forman & Kennedy, from the winter of 1842 to July, 1847. In the spring or summer of 1845, Thomas Barrett deposited with Worsley, Forman, & Kennedy a letter of credit from Michael Welch, guarantying the payment of bagging and rope, which Barrett might purchase, to a certain amount, within a certain named period. On the said letter of credit, Worsley, Forman, & Kennedy did,

as factors of the Louisville Manufacturing Company, sell to Barrett, at various times, sundry invoices of bagging and rope belonging to said Louisville Manufacturing Company, for which they took his acceptances for account of said company as follows; viz. one dated 22d July, 1845, due 20 – 23 December, for $ 891.32; one dated 28th August, 1845, due 10 – 13 January, 1846, $ 605.07; one dated 18th September, 1845, due 15 – 18 January, 1846, $ 531.50; one dated 1st December, 1845, due 20 – 23 January, 1846, $ 433.08.

" Subsequently to taking the acceptance last named, they sold him bagging and rope to the amount of $ 78.86, which stands to his debt on open account.

" Mr. Welch was not notified by Worsley, Forman, & Kennedy that the letter of credit had been deposited with them at the time it was deposited, nor until after the maturity of the acceptance first named above. Shortly after the maturity of the said bill, in the latter part of December or early part of January, I think between the 5th and 10th of January, I saw Mr. Welch in person; informed him of the sales of bagging and rope made by Worsley, Forman, & Kennedy to Mr. Barrett on his letter of credit; told him that the acceptance of Barrett for $ 891.32 was unpaid; that he would be looked to for the payment of it, and the other acceptances should they not be paid. He requested me to try and get all I could from Barrett.

" On the 7th of May, 1846, I addressed him a letter urging him to settle the claim. Saw him in person, don't recollect the date of the interview, and urged him to settle the business. He requested that he might not be pressed for payment, saying that it was a very hard case; that he did not wish to place any obstacle in the way of collecting the money; that he had not then at command the means of paying it conveniently; that he would have more ample means when the next cotton crop came into market.

" On the 26th of April, 1847, I had an interview with Mr. Welch. He remarked that he understood the letter of credit to restrict the time of the credit which might be given for goods purchased under it to the month of December.; that, under the impression, to protect himself against the liability, he retained under his control certain valuable papers of Barrett's, until the expiration of the time to which he thought his liability extended, when, upon the assurance of Mr. Barrett that the debt was settled, he surrendered the papers.

" I remarked to him that, in the interview which I had with him in the spring of 1846, he assured me that it was not his intention to place any obstacle in the way of the collection

of the money; that he asked, as a favor, that he might not be pressed for its immediate payment, representing that he had not then the means at command to pay it, but that he would be able to pay it with less inconvenience when the next cotton crop came into market; that he had induced the belief that he would pay it as soon as he could do so. He replied that it was at that time his intention to pay it, and that he would have done so, but that he subsequently learned that he would lose a much larger sum by Mr. Barrett; that he would be unable to bear so heavy a loss, and had come to the determination not to pay this claim, or any other claim growing out of his liability for Barrett, unless compelled by law.

." The papers to which I refer as having been in the hands of Mr. Welch, and which he said he might have retained to indemnify him, I did not understand him as saying had been placed in his hands by Mr. Barrett for that purpose, but came into his hands without any reference whatever to this liability; but that, if he had known he was liable, he could and would have re ained them.

" Mr. Welch did not, as well as I remember, make to me any promise to pay the bills, except in the manner previously referred to.

· " Worsley, Forman, & Kennedy, or Worsley & Forman, their predecessors in business, had previously sold to Mr. Barrett bagging and rope to a large amount, upon a letter of credit of Mr. Welch and Mr. Elgee, acting as the agent of Worsley, Forman, & Kennedy. I would not have sold goods to Mr. Barrett on time upon his individual responsibility alone.

" On the day of the maturity of the bill first maturing, the one for $ 891.32, d e 20 – 23 December, Mr. Duff, a young man who had charge of Mr. Barrett's business, called on me and told me that Mr. Barrett was sick; that he would be unable to pay the bill on that day, and requested that Worsley, Forman, & Kennedy would take it up, representing that he would be in funds to pay it in a few days, and, as soon as he was able, would pay it. In consequence of which, the bill was taken up by Worsley, Forman, & Kennedy, as agent of the Louisville Manufacturing Company.

W. CHAMBERS.

" New Orleans, February 23, 1848.

" To be admitted as evidence, as if sworn to and given in open court.

WM. DUNBAR, for Welch.
STOCKTON & STEELE, for Plaintiff.

" New Orleans, February 23, 1848.

" And on the same day the testimony of W. W. Whitehead was offered in evidence.

" I am acquainted with the bagging and rope trade in New Orleans; have been several times, at different periods, in the commercial house of Worsley, Forman, & Kennedy, and Forman & Kennedy; know that those articles are sometimes sold for cash, and sometimes on time. Time sales made about this period of the year are most frequently made payable about the beginning of the ensuing year, but vary as to the time; sometimes the bills are drawn payable as early as November and December, and sometimes the time is extended to January, February, and March. Time sales are also sometimes made on shorter time, to wit, thirty, sixty, ninety, and one hundred and twenty days.

W. W. WHITEHEAD.

" *New Orleans, May* 10, 1848."

" The above evidence is taken by consent of parties, and it is agreed that it may be read on the trial of the case of the Louisville Manufacturing Company *v.* Welch, as testimony, by either party.

STOCKTON & STEELE, *for Plaintiffs.*<br>WM. DUNBAR, *for Defendant.*

" *New Orleans, May* 10, 1848.

" And further on the same day, the testimony of D. Griffon was offered in evidence.

" I certify that the two accounts, A and B, are taken from the books of the late Thomas Barrett, and are a true copy of the same, and that they contain a full and correct statement of the accounts of Thomas Barrett and Michael Welch, Esq. I was a clerk in the house of Thomas Barrett during the period of the above two accounts, and know them to be correct, having compared them with the books. There were not, at any time, any funds or notes placed in the hands of Mr. Welch to secure him for his guaranty of the 3d May, 1845; if there had been, I should have known it. I have known that Captain Welch traded from Alexandria to New Orleans as captain of a steamboat, and was here every eight or ten days, from the 3d of May, 1845, up to this time.

D. GRIFFON.

" *New Orleans, 23d February,* 1848.

" We agree that the above evidence may be used as if the witness was sworn and examined in open court, in the case of the Louisville Manufacturing Company *v.* Mr. Welch, and that

the accounts A and B be taken without requiring the production of the books of Barrett.

STOCKTON & STEELE, *for Plaintiffs.*
WM. DUNBAR, *for Defendant."*

" *New Orleans, February* 23, 1848."

(Then followed a transcript of long accounts between Welch and Barrett.)

The following bill of exceptions was taken upon the trial : —

" Be it remembered, that on the trial of this cause, and before the jury retired, the plaintiffs by their counsel, Stockton & Steele, requested the court to charge the jury as follows : —

" 1. That the statement made by defendant to witness Chambers, who had called on behalf of plaintiffs to demand payment, that on the assurance of Barrett that the debt had been paid, he, Welch, had given up papers and security, by which he could have secured himself from loss, was an acknowledgment that he had due notice of the fact that the plaintiffs had sold the goods to Barrett on the faith of the letter of credit.

" 2. That if notice of the purchase of goods from plaintiffs on the letter of credit was given within a reasonable time by Barrett to defendant, it enured to the benefit of plaintiffs as effectually as if the notice had been given him directly from the plaintiffs.

" 3. That the immediate and strict notice required to be given by the holder of a protested bill of exchange or promissory note is not requisite in cases of guaranty.

" 4. That if there was no other notice, that given by plaintiffs at the time of the protest of the first bill, or shortly before or shortly after the date, was sufficient.

" 5. That the statement made by Welch, the defendant, to witness, Chambers, while the latter was acting for plaintiffs in endeavoring to collect the debt, that he had not then the means to pay the debt, but after another cotton crop he would be able to pay, and that ' he did not wish to throw any obstacles in the way of the collection of the debt,' was a waiver of all objections to the payment thereof, was an acknowledgment of his legal liability, and a promise to plaintiffs to pay them the debt.

" 6. That the failure to protest any of the bills of exchange was not a giving of further time to the debtor, Barrett, and the liability of the defendant was in no way affected thereby.

" 7. That the giving a reasonable credit to Barrett on the sales was no violation of the rights of Welch, and that the credits in this case were reasonable.

" 8. That the mistake of Welch as to the fact of the debt having been paid does not release his obligation.

" Whereupon the court instructed the jury as desired by the plaintiffs in their second, third, and sixth points of instruction, but refused to give any of the other instructions asked by the plaintiffs; to which ruling of the court, the plaintiffs by their said counsel excepted, tendered this their bill of exception, and prayed that it might be signed, which is done accordingly.

" And be it further remembered, that at the same time the defendant, by William Dunbar, his counsel, asked the court to charge the jury as follows: —

" 1. That upon acceptance by the plaintiffs, or their agents, of the letter of credit, notice should have been given in a reasonable time to the defendant that they had accepted the guaranty, and that they meant to furnish Thomas Barrett with bagging and rope upon the faith of defendant's guaranty.

" 2. That after the bagging and rope had been furnished by them, they should have given immediate notice to the defendant of the amount furnished, and the sum of money for which they looked to the defendant for payment.

" 3. That the credit to Thomas Barrett should not have been extended beyond the term mentioned in said letter of credit, viz. the 1st of December, 1845, the term mentioned in said guaranty.

" 4. That if the defendant had been released or discharged by the failure of the plaintiffs or their agents to give the proper notices to the defendant as before charged, the obligation of the defendant on the guaranty could be revived, or the laches or neglect of the plaintiffs, or their agents, waived only by a promise of the defendant to pay with a full knowledge of all the circumstances; and that the promise must be explicit, and made out by the most clear and unequivocal evidence.

" 5. That if the jury believe that time was given by the plaintiffs or their agents to Thomas Barrett, at the maturity of any of the drafts or notes sued on, without the consent of the defendant, the defendant is hereby relieved from the payment of any one of them upon which said time was given.

" Whereupon the plaintiffs objected to the court giving such instructions so asked by the defendant through his said counsel, but the court overruled said objections of the plaintiffs, and gave to the jury all the said instructions so asked as aforesaid by the defendant; to which ruling and instructions by the court the plaintiffs by their said counsel excepted, tendered this their bill of exceptions, and prayed the same might be signed, which is done accordingly. The court, in refusing to give the fifth instruction asked by the plaintiffs, stated to the jury that it was

a question of fact for their own determination, and that for that reason he refused to give that instruction.

                    "THEO. H. McCALEB, *U. S. Judge.*"

The jury found a verdict for the defendant, and the plaintiffs sued out a writ of error, under which the case was brought to this court.

It was argued by *Mr. Butterworth*, in a printed brief, for the plaintiffs in error, no counsel appearing for the defendant.

The points made by the counsel for the plaintiffs in error were the following, viz.: —

I. That the court erred in refusing to charge the jury as follows: —

1. " That the statement made by defendant to witness Chambers, who had called on behalf of the plaintiffs to demand payment, that on the assurance of Barrett, that the debt had been paid, he, Welch, had given up papers and security, by which he could have secured himself from loss, was an acknowledgment that he had due notice of the fact that the plaintiffs had sold the goods to Barrett on the faith of the letter of credit."

2. " That if there was no other notice, that given by the plaintiffs at the time of the protest of the first bill, or shortly before or after that date, was sufficient."

3. " That the statement made by Welch, the defendant, to the witness Chambers, while the latter was acting for the plaintiffs in endeavoring to collect the debt, that he had not then the means to pay the debt, but after another crop of cotton, he would be able to pay, and he did not wish to throw any obstacles in the way of the collection of the debt, was a waiver of all objections to the payment thereof, was an acknowledgment of his legal liability, and a promise to plaintiffs to pay them the debt."

4. " That the giving a reasonable credit to Barrett on the sales was no violation of the rights of Welch, and that the credits given in this case were reasonable."

5. " That the mistake of Welch as to the fact of the debt having been paid does not release his obligation."

II. The court erred in charging the jury as follows:

1. " That the credit of Thomas Barrett should not have been extended beyond the term mentioned in said letter of credit, viz. the 1st of December, 1845."

Upon this assignment of errors, we have only a few words of remark to offer to the court.

The conversation of Welch with Chambers, referred to in the first item of instructions to the jury asked by plaintiffs,

shows conclusively that Welch had had securities, or means of indemnity, in his hands against loss on account of this guaranty; that he had intended to hold on to them; and that he gave up these securities to Barrett only on the assurance of Barrett that the debt had been paid to the plaintiffs.

It seems, then, that Welch not only had *notice*, but he had reaped the fruits which the law intends shall be gathered from notice, security against loss. If he afterwards gave up these securities to Barrett, on his assurance that the debt had been paid, it was his own folly and misfortune; but the very reason which Welch assigned to Chambers for having given up the securities necessarily establishes the fact of due notice.

That Welch intended to hold on to these securities is established by the fact that he gave them up on the assurance of Barrett that the debt had been paid.

The court should have given the jury the instruction contained in the fourth item of instructions asked for by the plaintiffs. However, we do not deem it material, as what is said above is, in our opinion, conclusive on the matter of notice.

The same reason also relieves us from any necessity to remark upon the instructions given the jury at the instance of defendant, in regard to notice.

The conversation of Welch with Chambers, in our opinion, clearly establishes, also, that Welch acknowledged his indebtedness, and promised to pay the defendant; and, therefore, the fifth item of instruction to the jury, asked by the plaintiffs, should have been given by the court. Welch said that he had not then money to pay the debt; that after another crop of cotton he would be able to pay, and that he did not wish to throw any obstacles in the way of the collection of the debt.

This was certainly equivalent to a direct acknowledgment of, and promise to pay, the debt.

He did not wish to throw any obstacles in the way of the collection of the debt. Collection of the debt from whom? From a third person over whom he could have no control? From Barrett, who was assuredly bound, and the collection of the debt from whom, Welch could in no way whatever retard or obstruct? It would be unphilosophical to suppose, that Welch did not speak only in reference to his own liability, and to the collection of the debt from *himself.* It was tantamount to saying, I know I am liable for the debt; but I have no present means with which to pay; after another cotton crop, I shall be able to pay. I have no intention to dispute the debt. I do not dispute the debt.

The judge of the court of first instance assigned in the bill of exceptions, as a reason for refusing to give this instruction

to the jury, that it was matter of fact, and therefore to be judged of by the jury only.

We answer, that it is the province of the court to determine what words and circumstances amount to a promise to pay, or a waiver of a right. This is made plain, when the supposed promise to pay, or waiver, has been reduced to writing. In such case, it is clear that the court must instruct the jury as to the point of its being in law a promise or not, or a waiver or not. The court in such case instructs the jury, that if they believe the instrument of writing to have been executed by the party against whom it is adduced, then such instrument amounts in law, or does not amount in law (as the case may require), to a promise to pay, &c.

Now, we cannot conceive any reason which could give this power to the court in the case of a written instrument, and yet refuse it in case the obligation is evidenced only by parol; the question in each case is, Do the words, whether written or not, under the circumstances, amount, in law, to a promise, &c.?

The court should then, in our opinion, have instructed the jury, that, if they believed that Welch stated to Chambers that he had not then the means to pay the debt, but after another cotton crop he would be able to pay, and that he did not wish to throw any obstacles in the way of the collection of the debt, or spoke to him in words to that effect, then such words amounted to a waiver of all objections to the payment of the debt, to an acknowledgment of his legal liability therefor, and to a promise to the plaintiffs to pay them.

The rule attempted to be applied to this case, by the defendant, as to the necessity of knowledge on the part of Welch of all the circumstances, &c., is not applicable here, because that rule applies only when the party promising has done so without the knowledge of the fact, that notice had not been given according to law in order to bind him. But in the case at bar, the statements of Welch himself to Chambers show that he had had due notice; for Welch tells Chambers, that, on the assurance of Barrett that the debt had been paid, he had given up the securities, &c., which establishes that notice had been given, and that it came to his, Welch's, knowledge.

We think it fully established that this item of instruction should have been given the jury.

The seventh item of instruction asked for by the plaintiffs assumes that the giving a reasonable credit to Barrett on the sales was no violation of the rights of Welch.

The sales in this case were made to Barrett between the 3d May and 1st December, 1845; the four obligations of Barrett were taken, falling due on the 20th December, 1845; 10th January, 1846; 15th January, 1846; and 20th January, 1846.

The court refused to give the instruction ; and on the contrary, at the instance of the defendant, instructed the jury that the credit given Thomas Barrett should not have been extended beyond the term mentioned in the letter of credit, viz. the 1st of December, 1845.

The case of Samuell *v.* Howarth, mentioned in Fell on Guaranties, pages 165, 166, 167, is directly opposed to the ruling of the Circuit Court in this case.

The time within which sales were to be made under the guaranty in that case extended from 2d April, 1814, to 2d April, 1815. Goods were furnished *during that period* on certain credits, to be then paid for, with bills at three months, which bills were accordingly drawn and accepted, &c. These bills were again renewed from time to time; and the fresh bills again renewed, till June, 1816.

The Lord Chancellor said, as no stipulation was made as to the terms of credit, he would suppose them to be in the usual course of trade. In that case, in consequence of the frequent and unusual extension of the time of payment, by repeated renewals of the bills, the guarantor was held to have been discharged.

There is no necessity for a guaranty, when the terms of sale are cash ; the very nature of the undertaking presupposes a credit ; indeed, guaranty can exist only in cases in which credit is given.

Now, the guaranty in the case at bar extended to sales made at any time between its date, 3d May, 1845, and the 1st of December of the same year.

It is apparent, then, that the latter part of the term, according to the ruling of the Circuit Court, could have no effect at all. By the terms of the guaranty, the sales made on the 30th of November are as fully protected as those made on the 4th day of May ; but the ruling of the court would confine the sales of the 30th of November to the short credit of twenty-four hours.

We have not a doubt this ruling of the Circuit Court is erroneous.

The eighth item of instruction asked for by plaintiffs assumes that the mistake of Welch as to the fact of the debt having been paid does not release his obligation.

The court refused to give this instruction. Welch, in conversation with Chambers, the agent of plaintiffs for collection of the debt, stated to Chambers, that on the assurance of Barrett that the debt had been paid, he, Welch, delivered up to Barrett securities, &c., by means of which he could have secured himself from loss.

We are at a loss to conceive how the mistake of Welch as to a fact, to look to which was his duty, can in any degree affect the rights of the plaintiffs, who had neither any interest, nor any authority, to meddle with the matter of indemnity against loss furnished by Barrett to Welch.

Mr. Justice NELSON delivered the opinion of the court.

This is a writ of error to the Circuit Court held by the district judge in and for the District of Louisiana.

The suit was brought upon the following letter of credit signed by the defendant, and dated New Orleans, 3 May, 1845: "I hereby guaranty the payment of any purchases of bagging and rope which Thomas Barrett may have occasion to make between this and the 1st of December next."

It appeared that this letter of credit, soon after it was given, was deposited by Barrett with a house in New Orleans, who, as the factors of the plaintiffs, sold, at different periods, within the time prescribed, several parcels of bagging and rope, and delivered the same to Barrett on the faith of it, giving the usual credit on the sales of goods of this description, and taking his acceptances for the price, payable at the expiration of the credit to the order of the plaintiffs.

There were four different parcels sold at different times, and the usual credit given, on each of the sales, extended beyond the 1st of December, the time mentioned in the guaranty.

No notice was given to the defendant by the house in New Orleans, nor by the plaintiffs, of the acceptance of his letter of credit, or of the sales made to Barrett on the faith of it.

Shortly after the maturity of the first acceptance, which was in the latter part of December, the clerk of the New Orleans house called on the defendant, and gave him notice the acceptance was unpaid, and that he would be looked to for payment; and also for the payment of the acceptances then running to maturity, if unpaid when they fell due. The defendant desired the clerk to obtain all he could from Barrett towards the payment. Subsequently, and after all the acceptances had become due and were dishonored, the clerk had a second interview with him, when he expressed a wish that he might not be pressed for the payment immediately, observing, that he did not wish to interpose any obstacle to the collection of the demand; that he had not the means of paying the amount then conveniently; but would have them at the coming in of the next cotton crop.

At a still later interview, the defendant expressed the opinion, that his letter restricted the time of credit to Barrett for the goods to be purchased to the 1st of December, stating that,

under this impression, he had delivered up to him certain securities at the expiration of the period of the credit given, which he held as an indemnity, Barrett assuring him at the time that the demand had been settled.

The evidence being closed, the following instructions were, among others, prayed for, on the part of the plaintiff, and refused.

1. That the giving a reasonable credit to Barrett on the sales was no violation of the rights of the defendant; and that the credits in this case were reasonable.

2. That the mistake of the defendant as to the fact of the demand having been paid did not release his obligation.

And the court gave, among others, the following instructions: —

1. That after the bagging and rope had been furnished by the plaintiffs, they should have given immediate notice to the defendant of the amount furnished, and the sum of money for which they looked to him for payment.

2. That the credit to Barrett should not have extended beyond the term mentioned in the said letter of credit, to wit, the 1st of December.

The jury found a verdict for the defendant.

I. We are of opinion, that the court below erred in the construction given to the terms of the letter of credit. It guarantied the payment of any purchases of bagging and rope that Barrett might have occasion to make between its date and the 1st of December. The limitation is as to the time within which the purchases were to be made; not as to the time of the credit to be given to the purchaser. As credit was contemplated, indeed was the special object of the guaranty, that which was given upon the sales of goods of this description in the ordinary course of trade must have been intended. And, for aught that appears in the case, this was the credit given.

The time for which credit was to be given upon the purchases is left indefinite in the instrument, and must receive a reasonable interpretation; one within the contemplation of the parties; and that obviously is as we have stated. Samuell v. Howarth, 3 Mer. 272.

There might be some doubt upon the language used by the court below on this point, whether, in charging that the credit to Barrett should not have been extended beyond the 1st of December, it was not intended to refer to the purchases of the goods, and not to the period of credit given.

But when taken in connection with the seventh instruction prayed for and refused, all ambiguity is removed.

Besides, no question appears to have been raised, that the

40 *

price was claimed for any goods sold beyond the limit of the guaranty.

II. We are also of opinion, that the court erred in the instruction, that, after the bagging and rope had been furnished to Barrett, the plaintiffs should have given immediate notice to the defendant of the amount furnished, and of the sum of money for which they looked to him for payment.

The rule as laid down by this court in Douglass and others *v.* Reynolds and others (7 Peters, 126) is, that, in a letter of credit of this description, all that is required is that, when all the transactions between the parties under the guaranty are closed, notice of the amount for which the guarantor is held responsible should, within a reasonable time afterwards, be communicated to him.

What is a reasonable time must depend upon the circumstances of each particular case, and is generally a question of fact for the jury to determine. Lawrence *v.* McCalmont et al., 2 Howard, 426.

It was also ruled in that case, that, when the debt fell due against the principal debtor, a demand of payment should be made, and in case of non-payment by him, that notice of such demand should be given in a reasonable time to the guarantor, and that otherwise he would be discharged from his liability.

When the case came before the court a second time, and which is reported in 12 Peters, 497, the principle here stated was somewhat qualified, the court holding that, in case of the insolvency of the principal debtors, and total inability to respond to the surety before the debt fell due, the demand and notice might be dispensed with.

The court refers to a class of cases both in England and in this country, drawing the distinction between the liability assumed by a guarantor, and that of the drawers or indorser of commercial papers ; the former being held liable on his guaranty in the absence of any demand and notice, unless some damage or loss had been sustained by reason of the neglect; while, in order to charge the latter, strict demand and notice must be shown according to the law merchant.

The authorities are very full on this head, and are founded upon sound and substantial reasons. 8 East, 242 ; 2 Taunt. 206 ; 3 B. & Cr. 439, 447 ; 1 Ib. 10 ; 5 M. & S. 62 ; 5 M. & Gr. 559 ; 9 S. & R. 198 ; 1 Story, 22, 35, 36 ; Chitty on Bills, 324 ; Chitty, jr. 733 ; 3 Kent, Com. 123.

When this case was before the court the second time, one of the grounds upon which a new trial was ordered was the refusal of the court below to instruct the jury, that, if they found the principal debtors, at or previous to the time the payment of

the debt fell due, insolvent, the omission to demand payment and give notice to the guarantor did not discharge him from his liability. The rule, therefore, above stated, was not only laid down very distinctly, but applied in that case in the final disposition of it by the court.

The same doctrine is very fully stated and enforced by Mr. Justice Story in Wilder v. Savage, already referred to; and also laid down in his work on Promissory Notes (§ 485), and by Chancellor Kent in his Commentaries (Vol. III. p. 123.)

The same course of reasoning and authority would seem to be equally applicable to the notice required of the goods furnished or credits given under the guaranty, and on the faith of it at the close of the transactions, and of the amount for which the party intended to look to the guarantor for payment, so as to advise him of the extent of his liabilities. We perceive no reason why the rule in respect to notice should be more strict in this stage of the dealings of the parties, than at the time when the debt becomes due; or that the guarantor should be discharged for the delay in giving this notice, when no loss or damage has resulted to him thereby. He has already had notice of the acceptance of the guaranty, and of the intention of the party to act under it. The rule requiring this notice within a reasonable time after the acceptance is absolute and imperative in this court, according to all the cases; it is deemed essential to an inception of the contract; he is, therefore, advised of his accruing liabilities upon the guaranty, and may very well anticipate, or be charged with notice of, an amount of indebtedness to the extent of the credit pledged. Still, it may be reasonable that he should be advised of the actual amount of liability, when the transactions are closed; and, if any loss happens in consequence of the omission to give the notice within a reasonable time, the fault is attributable to the laches of the creditor, and must fall on him.

Upon this view, the doctrine governing the question of notice at the close of the dealings on the faith of the guaranty, and also at the subsequent period when the indebtedness under it becomes due, is consistent and reconcilable, and places the duty of the creditor on the one hand, and the obligation of the guarantor on the other, in both instances, upon those general principles which have always been applied to contracts of this description, and preserves and maintains throughout the settled distinction on the subject of notice between the liability assumed by the guarantor, and that of the drawer or indorser of commercial paper.

This intermediate notice required in this court does not appear to be a necessary step to charge the guarantor according

to the English cases, as notice of acceptance and intention to act upon the guaranty is regarded as sufficient, until the debt becomes due and payable; then reasonable notice of the default of the principal to pay must be given, as otherwise, if loss or damage should happen in consequence of the omission, it would operate as a discharge to that extent.

Returning, then, to the case in hand, we think the court erred in charging the jury in respect to this intermediate notice of the goods furnished, and of the sum for which the plaintiffs intended to look to the defendant for payment, in holding that it should be given immediately upon the closing of the dealings under the guaranty; as reasonable notice, in the cases in which it is required, is all the diligence that is essential in order to comply with the rule. According to the instruction, the jury must have understood that notice to charge the defendant should have been as strict as in the case of a drawer or indorser of a bill of exchange.

The eighth instruction refused, to wit, that the mistake of the defendant as to the fact of the debt having been paid did not discharge him, is not very intelligible; but, as a proposition standing alone, should have been given or explained. The refusal implied that the mistake operated to discharge the defendant, which we presume was not intended. The instruction is incautiously drawn, and was, doubtless, connected with some other matters that have not been brought into it. It was probably connected with the facts embodied in the first instruction, in which the court was requested to charge that the admission of the defendant to the clerk that he had given up certain papers to Barrett which would have indemnified him, on his assurance that the debt had been settled, was an acknowledgment of due notice that the plaintiffs had sold the goods on the faith of the letter of credit.

This instruction was properly refused, as the inference sought to be drawn from the statement was not a matter of law. At most, it could only be a question for the jury, accompanied with proper directions of the court as to the law. The admissions were made more than a year after the debt had become due, and the failure of Barrett to make payment. The time when the defendant possessed this knowledge was material in order to make out due notice, and this is not embraced in the proposition upon which the court was called upon to charge. If submitted to the jury, this must necessarily have entered into the instructions that should have been given to them.

The court was also right in refusing the fifth instruction, as it respected the promise of the defendant to the clerk to pay, as the effect of the promise, if made, depended upon the ques-

tion whether it was made with a full knowledge of all the facts going to discharge him from his obligation.

This question was, therefore, properly submitted to the jury.

But, upon the grounds above stated, and principally the misconstruction of the terms of the letter of credit, which was fatal to the right of the plaintiffs, and the error in respect to the degree of diligence to be used in giving notice of the transactions under it, the judgment must be reversed, and the case remitted, and a *venire de novo* awarded for a new trial.

### *Order.*

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the District of Louisiana, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this court, that the judgment of the said Circuit Court in this cause be, and the same is hereby, reversed, with costs, and that this cause be, and the same is hereby, remanded to the said Circuit Court, with directions to award a *venire facias de novo.*