FIRST NATIONAL BANK OF HIGHLAND PARK, Trustee, *et al.*, Plaintiffs-Appellants, v. MID-CENTRAL FOOD SALES, INC., Defendant-Appellee.

First District (2nd Division)   No. 84—611

Opinion filed December 18, 1984.—Rehearing denied January 22, 1985.

---

McDermott, Will & Emery, of Chicago (Joseph Keig, Jr., and Mary Ellen Hogan, of counsel), for appellants.

Palmer, Blackman, Mancini & Riebandt, P.C., of Park Ridge (Janeth A. Schwandt and Roy C. Palmer, of counsel), for appellee.

JUSTICE STAMOS delivered the opinion of the court:

Plaintiffs First National Bank of Highland Park (First National) and W.V.W. Inc. (W.V.W.) brought suit for payment of real estate taxes due after termination of plaintiffs' lease with defendant Mid-Central Food Sales, Inc. (Mid-Central), attorney fees and interest, pursuant to provisions of the lease. The basic facts were not disputed, and both sides filed motions for summary judgment, the central question being the proper interpretation of paragraph 17 of the lease. The trial court denied plaintiffs' motion and granted defendant's motion for summary judgment.

The argument in this court focuses on the proper interpretation to be given to the disputed provision of the lease agreement entered into between plaintiffs and defendant Mid-Central. On June 27, 1979, Mid-Central became the sole beneficiary of trust No. 2844, held by First National. Oral argument disclosed that Mid-Central owned the property during 1978 as well. The trust *res* consisted solely of improved real estate in Northfield. On July 2, 1979, Mid-Central assigned all of its beneficial interest in trust No. 2844 to W.V.W. On the same date, First National, acting on behalf of and at the direction of W.V.W., executed with Mid-Central a written lease of the property for a term beginning July 2, 1979, and ending July 1, 1982.

Paragraph 17 of the lease, the interpretation of which forms the basis of this suit, is a provision which shifts the burden of paying the real estate taxes to the lessee for the duration of the lease. Paragraph 16 requires lessee to pay all reasonable costs and attorney fees expended by the lessor in enforcing the lease.

Neither the terms of the assignment nor the lease provided for payment of 1978 taxes or taxes for the first half of 1979. While Mid-Central was in possession of the property as lessee, both sides apparently agree that Mid-Central paid the second installment of 1978 taxes and the first installment of 1979 taxes. Plaintiffs argue that Mid-Central paid the taxes based upon its status as prior beneficial owner, not lessee. Mid-Central asserts that there is no competent evidence supporting plaintiffs' allegation and that such a conclusion should be stricken or ignored.

Mid-Central vacated the premises at the conclusion of the lease term on July 1, 1982. During the three-year term of the lease, Mid-Central paid all the real estate taxes except for the second installment of the 1981 taxes and its *pro rata* share of the 1982 taxes. Plaintiffs sent Mid-Central notice that plaintiffs believed Mid-Central was liable for the 1981 taxes and, at the time the amended verified complaint was filed, for the *pro rata* share of the 1982 taxes. When Mid-Central refused to pay the taxes, plaintiffs paid the amounts owed to avoid allowing the taxes to become delinquent. Plaintiffs then commenced this action and, upon cross-motions for summary judgment, an order was entered denying plaintiffs' motion, granting Mid-Central's motion and entering judgment for Mid-Central. Plaintiffs appeal that order contending that the trial court's interpretation of paragraph 17 of the lease was incorrect as a matter of law. Plaintiffs are also requesting attorney fees pursuant to paragraph 16 and prejudgment interest.

Upon review of a trial court's entry of summary judgment, the appellate court uses a two-prong analysis. First, the court determines whether the lower court was correct in ruling that no genuine issue of material fact was raised and, second, if none was raised, whether entry of the judgment was correct as a matter of law. *Fuller v. Justice* (1983), 117 Ill. App. 3d 933, 453 N.E.2d 1133.

■ In the present case, the central question concerns the proper interpretation of paragraph 17 of the lease. The interpretation of a lease is purely a question of law when the terms are plain and unambiguous. (*Advertising Checking Bureau, Inc. v. Canal-Randolph Associates* (1981), 101 Ill. App. 3d 140, 143, 427 N.E.2d 1039.) Whether an ambiguity exists is also a question of law. (*Pioneer Trust & Savings*

*Bank v. Lucky Stores, Inc.* (1980), 91 Ill. App. 3d 573, 575, 414 N.E.2d 1152.) Ambiguity refers to an obscurity in meaning "through indefiniteness of expression, or having a double meaning." (91 Ill. App. 3d 573, 575.) The paragraph in question reads as follows:

> "17. Throughout the term of this Lease, Lessee shall pay when due all taxes, *** together with any interest and penalties thereon, which are imposed or levied upon or assessed against the premises or any part thereof."

The above-quoted language, though not drafted as artfully as it could have been, is clearly not ambiguous; therefore, there is no genuine issue of material fact present. Paragraph 17 unambiguously shifts the tax burden to the lessee throughout the term of the lease. Since no ambiguity exists, it was appropriate for the trial court to interpret the lease as a matter of law.

Under the second prong of the analysis, we will review the propriety of the trial court's interpretation which resulted in entry of judgment against plaintiffs. The trial court interpreted paragraph 17 of the lease to mean that the lessee was only liable for taxes imposed during the term of the lease that also became due and owing during the term of the lease. Plaintiffs argue that such an interpretation is incorrect as a matter of law. Plaintiffs argue that paragraph 17 requires Mid-Central to pay those taxes which are imposed or assessed on the property during the term of the lease and that Mid-Central's liability for those taxes is not contingent upon Mid-Central's actually being in possession of the premises when the taxes became due.

The law in Illinois is settled that the owner of real property on January 1 in any year shall be liable for the taxes of that year. (Ill. Rev. Stat. 1981, ch. 120, par. 508a.) Also, the taxes are a first lien on such real property from and including the first of January in the year the taxes are levied. (Ill. Rev. Stat. 1981, ch. 120, par. 697.) In *Metropolitan Airport Authority v. Farliza Corp.* (1977), 50 Ill. App. 3d 994, 336 N.E.2d 112, the court held that the lessor as owner was liable for real estate taxes in the absence of a clear and unambiguous provision shifting the burden of such taxes to the lessee. (50 Ill. App. 3d 994, 997-98.) As stated above, the language of this lease provision is not ambiguous and clearly shifts the tax burden to the lessee, defendant herein.

Concerning the proper interpretation of paragraph 17, Mid-Central urges an interpretation that would require, as the trial court found, the taxes to be imposed and become due and payable during the term of the lease before Mid-Central would be liable for said taxes. Plaintiffs maintain, however, that as long as the taxes are im-

posed during the term of the lease, Mid-Central is liable for those taxes even though the actual tax bill is not due and payable until after the lease term has expired. There is sparse case law on this subject in Illinois. A case cited by both parties in support of their respective positions is *349 West Ontario Building Corp. v. Palmer Truck Leasing Co.* (1974), 22 Ill. App. 3d 467, 317 N.E.2d 740.

In *349 West Ontario*, the plaintiffs, as owner and sublessor of improved real estate, brought an action against the guarantors of the sublessees for breaches by the sublessees of certain covenants to pay rent and tax deposits. The sublessees leased commercial property for a 10-year term beginning January 1, 1960, and ending December 31, 1969. The parties agreed that should possession be delivered after January 1, 1960, sublessees' obligation to pay rent would not commence until the date of delivery of possession. The sublease provided that sublessees were responsible for real estate taxes, and a specific provision required sublessees to make monthly deposits toward taxes which lessor would then apply toward the taxes as they came due. If the deposits were insufficient when the bill was issued, the sublessees would pay the balance; any surplus would be held by lessor for future tax payments.

The sublessees took possession in May of 1960, though they voluntarily paid all rental fees from January 1, 1960. The sublessees continued to make all rental and tax payments through March of 1968 and paid $1500 toward the rent due for April of 1968. One of the sublessees had vacated on or about November 14, 1967, when it was involuntarily dissolved, and the other vacated on May 15, 1968. The plaintiffs contracted to sell the property on or about September 1, 1968.

The plaintiffs sought rental and tax deposits for the period April 1, 1968, through October 8, 1968. During trial, defendants argued that since the sublessees paid rent from January 1, 1960, through May of 1960, they should be given credit for those payments against any rentals claimed for months owed at the end of the term. Defendants also argued that the deposits for taxes, to be applied toward any taxes due and payable during the term of the sublease, were adequate to cover any taxes owed by sublessees. Plaintiffs had computed the taxes owed as damages by including a ratable portion of the taxes for 1968, the bill for which would not arrive until 1969. The trial court found for the defendants, stating that the defendants owed nothing. The appellate court stated that sublessees' rental payments from January to May of 1960 were not due as a result of the lease, but were rather advance rentals that could be applied against the 1968 unpaid rents. 22 Ill. App. 3d 467, 473.

On the tax issue, the appellate court stated that sublessees' tax obligation was solely a result of the clause in the lease providing in pertinent part:

"Lessee [sublessee] further agrees to pay as additional rent *** all general real estate taxes *** which may be levied, assessed or imposed upon said premises *** now due or accruing *and becoming due and payable during the term of this lease.*" (Emphasis added.) (22 Ill. App. 3d 467, 473-74.)

The plaintiffs argued that sublessees were liable for the 1968 taxes based on the above provision. The plaintiffs argued that since the taxes were *imposed* before the end of the sublease, that sublessees were liable for the taxes. The sublessees had made no tax deposits after March of 1968. The lease specifically provided that the sublessees' tax obligation commenced "with the general real estate taxes for the year 1960." 22 Ill. App. 3d 467, 474.

The appellate court interpreted the language of the lease to require sublessees to pay real estate taxes imposed during the term of the sublease only if such taxes became due and payable during the term of the lease. The lease clearly based sublessees' tax obligation on both the time of imposition and the time of payment. The court then denied plaintiffs' request for additional tax deposits.

A close reading of *349 West Ontario* discloses that the court was correct in denying additional tax deposits, but the opinion also allows differing inferences to be drawn. The court stated that "[s]ince the 1968 taxes became due and payable upon receipt of the 1968 bill in 1969, those taxes were not due and payable during the term of the sublease and the subtenants were not required to pay them." (22 Ill. App. 3d 467, 475.) However, the first five months of payments by sublessees in 1960, before they were in possession, must have included tax deposits as well because the language of the lease provided for those payments as "additional rent" that had to be paid "simultaneously with the payment of *** monthly installments of rent." (22 Ill. App. 3d 467, 473-74.) Thus, like the advance rents, these early tax deposits in 1960 were not due as a result of the lease (22 Ill. App. 3d 467, 475) and were apparently counted by the court as advances against tax deposits owed for 1968. Consequently, it appears that sublessees owed no additional taxes in 1968 because of the prepayments in 1960. The plaintiffs' argument in that case for additional taxes suggested that plaintiffs wanted to keep the early tax deposits in 1960, though sublessees were not in possession when they paid them, and require sublessees to pay deposits for the months April through September of 1968 even though sublessees had vacated in May of 1968

and the lease terminated. The plaintiffs, if they had prevailed, would have received more than sublessees' *pro rata* obligation for 1968 tenancy, and the court correctly refused to order any additional payment. The early 1960 payments were apparently sufficient to cover the April and May 1968 tax deficit since the last tax deposit was made in March of 1968.

Herein lies the apparent inconsistency between what the court said and what it did. Though the court construed the language of the lease as requiring the tax bill to actually arrive during the term of the lease to trigger sublessees' liability, the court also had sublessees paying their *pro rata* share of 1968 taxes even though the bill for those taxes would not arrive until 1969, long after the lease had terminated and the sublessees vacated the premises. Even if the sublessees had made no tax deposits in early 1960, contrary to our assumptions in the preceding paragraph, the opinion clearly states that sublessees made tax deposits through March of 1968. (22 Ill. App. 3d 467, 470.) These tax deposits, as a practical matter, had to be for 1968 taxes that would not become due and payable until 1969. But, since the court did not order a return of those payments, and the sublessees had made payments for the entire prior lease term, the sublessees effectively paid a *pro rata* portion of 1968 taxes, regardless of language in the opinion to the contrary.

As applicable to the present action, *349 West Ontario* is important for two reasons. One, the language of that lease clearly required sublessees to pay only those taxes that became due and payable during the term of the lease. Contrary to the assertions of Mid-Central, the interpretation of that lease does not support a similar interpretation here. Paragraph 17 of this lease clearly, unambiguously and as a matter of law requires Mid-Central to pay those taxes that are imposed or assessed on the demised premises during the term of the lease regardless of when Mid-Central receives the tax bill.

Second, the court in *349 West Ontario* implicitly recognized the liability of sublessees for their *pro rata* share of taxes for its period of tenancy during 1968. The opinion clearly states that tax deposits were made by sublessees during 1968, and, since the court did not order a return of those deposits, the sublessees were thus paying a *pro rata* portion of 1968 taxes that would not be due and payable until 1969. That implicit recognition is consistent with the result that we reach here, namely, that the lessee is liable for its *pro rata* share of taxes imposed during 1982 based upon lessee's possession of the premises during that period and the effectiveness of the lease through July 1, 1982, even though those taxes are not due and payable until 1983.

Two other Illinois cases, cited and discussed by both parties, are somewhat useful in the disposition of this case. The first, *Masters v. Newcomb* (1922), 227 Ill. App. 6, 9, involved a lease that required the lessee to "pay all the taxes assessed against said lands annually." The court construed the phrase by transposing the word "annually" in the sentence to mean that the lessee was liable to pay the taxes which became payable annually. (227 Ill. App. 6, 10.) The court said the word annually referred to the time of payment, not the time of assessment. (227 Ill. App. 6, 10.) In the present case, the pertinent provision clearly makes the time of imposition and assessment the *sine qua non* of Mid-Central's tax liability, not the time of payment as in *Masters*.

The other case, *Thornton v. Helmick* (1916), 201 Ill. App. 592, involved an exchange of real estate. The lawsuit was based upon a construction of the words, "subject to taxes and special assessments levied and payable after the year A.D. 1911." The contract was dated August 24, 1912, and the questioned assessments were claimed to be payable after 1911. The court stated that the word "payable" required the purchaser to pay only assessments not due but payable after 1911 and, consequently, was liable for an assessment that was payable after 1911, even though it became a lien on the property prior to 1911. The language in the agreement in *Thornton* clearly warranted the result the court reached because, again, the parties made the time of payment the pivotal factor regarding tax liability, not, as here, the time the tax was imposed or assessed.

■ Based on the foregoing, we find that defendant Mid-Central is liable for the second half of the 1981 taxes and a *pro rata* share of the 1982 taxes. Paragraph 17, as a matter of law, requires Mid-Central to pay those taxes imposed or assessed throughout the term of the lease, as those taxes become due and payable, regardless if the term of the lease has expired when the bills are received or due.

■ Two ancillary contentions require examination. Paragraph 16 of the lease states:

"Lessee will pay and discharge all reasonable costs, attorney's fees and expenses incurred by Lessor, in enforcing the covenants and agreements of this lease."

Pursuant to that paragraph, plaintiffs request this court to make an award of attorney fees. In *Wanderer v. Plainfield Carton Corp.* (1976), 40 Ill. App. 3d 552, 351 N.E.2d 630, the appellate court affirmed the trial court's award of attorney fees to a lessor under the following clause of a lease:

" 'Lessee will pay and discharge all reasonable costs, attorneys fees and expenses that may be incurred by Lessor, in enforcing

the covenants and agreements of this lease, and all covenants and agreements herein contained.' " (40 Ill. App. 3d 552, 560.)

Paragraph 16 of the present lease is strikingly similar to the above-quoted lease provision. Since we are reversing the trial court, based upon its interpretation of the lease provision as being favorable to plaintiff, we also remand the cause for a hearing on fees.

■ The plaintiffs lastly urge the imposition of prejudgment interest against Mid-Central for its nonpayment of taxes. Under section 2 of "An Act in Relation to the Rate of Interest" (Ill. Rev. Stat. 1981, ch. 17, par. 6402), creditors "shall be allowed to receive [interest] at the rate of five (5) per centum per annum for all moneys after they become due on any *** instrument of writing." A lease is an instrument of writing. (*Montgomery Ward & Co. v. Wetzel* (1981), 98 Ill. App. 3d 243, 250, 423 N.E.2d 1170.) Also, a good-faith defense does not preclude an award of prejudgment interest on money due under the instrument. 98 Ill. App. 3d 243, 250.

Paragraph 2 of count II of plaintiffs' amended verified complaint for damages sought $508.69 as interest at 5% per annum from August 6, 1982, to May 23, 1983. Inasmuch as the trial court entered judgment against the plaintiffs, it also denied plaintiffs' interest request. On remand of this matter on the issue of attorney fees, we also order a hearing on the prejudgment interest issue.

The trial court's entry of summary judgment for defendant and against plaintiffs is reversed and the cause is hereby remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

HARTMAN, P.J., and PERLIN, J., concur.