BANDAG, INCORPORATED, Plaintiff–Appellant,

v.

NATIONAL ACCEPTANCE COMPANY OF AMERICA, Defendant–Appellee.

No. 87–2885.

United States Court of Appeals, Seventh Circuit.

Argued April 20, 1988.

Decided Aug. 26, 1988.

---

Robert W. Bergstrom, Bergstrom, Davis & Teeple, Chicago, Ill., for plaintiff-appellant.

Sheldon L. Solow, Weissman, Smolev & Solow, Chicago, Ill., for defendant-appellee.

Before BAUER, Chief Judge, and COFFEY and FLAUM, Circuit Judges.

COFFEY, Circuit Judge.

In this diversity case, plaintiff-appellant Bandag, Inc. ("Bandag") seeks to collect $40,000 plus statutory interest from defendant-appellee National Acceptance Company of America ("NAC"). NAC was the primary commercial lender to McCord Tire and Supply Company, Inc. ("McCord"), a purchaser of Bandag products. NAC guaranteed McCord's debts to Bandag, up to $40,000. When McCord defaulted, Bandag sought payment from NAC. NAC denied liability, arguing that its agreement with Bandag guaranteeing McCord's debts (the "letter of guaranty") had expired. NAC moved to dismiss Bandag's suit for payment and the district judge entered judgment for NAC. Bandag appeals. We reverse.

## FACTS

Bandag sells materials and equipment used to retread automobile and truck tires. McCord is a local company that purchased retreading materials and equipment from Bandag. NAC provided secured loans to McCord and held a lien on all of McCord's business assets. NAC also acted as guarantor of some of McCord's debts to trade creditors. Pursuant to its position as McCord's commercial lender, NAC entered into a letter of guaranty with Bandag. The letter stated that:

> "For good and valuable consideration, receipt whereof is hereby acknowledged NATIONAL ACCEPTANCE COMPANY OF AMERICA ("NAC") guarantees the following:
>
> That upon shipment of the merchandise ordered by McCord Tire & Supply Company, ("McCord") of Elk Grove Village, Illinois, after the date of commencement of this guaranty as stipulated in purchase orders to you, NAC will make payments to you of invoices for merchandise so shipped for amounts not exceeding $40,000.00 in the aggregate, upon demand, if payment is not made by McCord according to the terms and conditions of the invoices covering said sale.
>
> You hereby agree to send copies of invoices to NAC at the above address of the merchandise, when requesting payment.
>
> This guaranty shall be limited in the amount of $40,000.00 in the aggregate outstanding at any one time and shall

commence January 25, 1984 and terminate December 31, 1984. It will also terminate after NAC has made $40,000.00 in disbursements to you and our liability will reduce as each payment is made."

On December 31, 1984, NAC sent Bandag another letter, providing that the "guaranty is hereby extended from January 1, 1985 to December 31, 1985."

Bandag sold and shipped goods to McCord throughout 1985. Bandag's invoices called for payment in ninety days, with a discount for earlier payment. By the end of 1985, McCord owed Bandag approximately $100,000 for goods that Bandag had shipped to McCord during October, November and December of that year, but that McCord had not yet paid for. Payments on the unpaid invoices were not due until after January 1, 1986, thus after the expiration of the letter of guaranty. On January 8, 1986, McCord filed a petition for relief under Chapter 11 of the Bankruptcy Code. McCord's filing of the petition for relief in the bankruptcy court convinced Bandag that no further payments would be forthcoming from McCord, so Bandag decided to pursue relief under the letter of guaranty.

On January 17, 1986, Bandag wrote to NAC, demanding payment of the $40,000 guaranty. NAC disputed its liability, contending that the defaulted payments did not become due until after the guarantee had terminated. Bandag then sued NAC in federal district court and NAC moved to dismiss, arguing that it owed Bandag nothing because the letter of guaranty had expired before McCord's debts became due. The district court agreed with NAC and granted the motion to dismiss.

## DISCUSSION

When the district judge granted NAC's motion to dismiss, she relied on section sixty-six of the "Guaranty" topic in the legal encyclopedia *Corpus Juris Secundum*. That section provides that "the guarantor's liability accrues on the date the guaranteed debt or a part thereof becomes due according to the terms of the contract, and the principal fails to pay." 38 C.J.S. *Guaranty* § 66 (1943 & Supp.1988). Thus, in the trial judge's view, NAC was liable to Bandag only if the terms of the invoices required payment prior to the termination date of the letter of guaranty. However, we disagree with the district judge's approach.

The parties agree that the law of Illinois governs this dispute; thus, regardless of the state of the common law on this issue nation-wide, Illinois decisions govern our resolution of this matter.[1] *See, e.g., In re Air Crash Disaster Near Chicago, Illinois on May 25, 1979*, 644 F.2d 594, 605–06 (7th Cir.1981) (state supreme court decisions on state law questions are binding on federal court); *Green v. J.C. Penney Auto Insurance Co.*, 806 F.2d 759, 761 (7th Cir.1986) (state appellate decisions useful); *Sarnoff v. American Home Products Corp.*, 798 F.2d 1075, 1084 (7th Cir.1986) (same); *McCoy v. Richards*, 771 F.2d 1108, 1110 (7th Cir.1985) (in absence of state supreme court decision, state appellate decision usually dispositive). Bandag cited several Illinois decisions to the district judge who attempted to distinguish them all, without individual discussion, in a two-sentence footnote. We agree with Bandag that its citations are persuasive and we hold that the district judge erred in sweeping them aside in favor of the analysis of a general legal encyclopedia.

The district judge reached her decision in this case by relying on section sixty-six of C.J.S.'s *Guaranty* discussion, entitled "Time of Accrual of Liability." While the subject matter of this section is, indeed, somewhat similar to the subject of this dispute, it is also critically distinct. Section sixty-six of C.J.S. discusses the question when a cause of action accrues, thus allowing a party to sue to enforce a guaranty. *See, e.g., Mazur v. Stein*, 314 Ill.App. 529, 534–35, 41 N.E.2d 979, 982 (1942) (cited at 38 C.J.S. *Guaranty* § 66 n. 39; cause of

---

1. When the parties agree on choice of law, we need not address the issue further. *See, e.g., SNACI, S.R.L. v. Illinois Foundation Seeds, Inc.*, 830 F.2d 90, 92 n. 1 (7th Cir.1987); *Marmon Group, Inc. v. Rexnord, Inc.*, 822 F.2d 31, 34 n. 2 (7th Cir.1987).

action accrues for statute of limitations purposes when creditor may demand payment from primary obligor). However, whether a creditor may, at a given time, sue to enforce its rights under a guaranty is not the same issue as whether an enforceable right has been established. The primary distinction between the two issues is that the first is a rule of judicial administration governing the timing of suits, while the second is a rule of substantive law setting forth the actual rights of the parties. This case raises the latter question, not the former; thus, the district judge mistakenly applied the wrong body of substantive law in interpreting the letter of guaranty.[2]

■ Under Illinois law, a guaranty is the promise of a third party to pay the obligation of the party primarily liable, if the party primarily liable fails to do so. *McCracken v. Olson Companies, Inc.*, 149 Ill.App.3d 104, 112, 102 Ill.Dec. 594, 600, 500 N.E.2d 487, 493 (1986). When a guaranty is embodied in a written contract, as in the instant case, the ordinary rules of contract construction apply. *Blackhawk Hotel Ass'n v. Kaufman*, 85 Ill.2d 59, 64, 51 Ill.Dec. 658, 660, 421 N.E.2d 166, 168 (1981); *State Bank of East Moline v. Cirivello*, 74 Ill.2d 426, 431, 24 Ill.Dec. 839, 841 386 N.E.2d 43, 45 (1978). When a court takes it upon itself to interpret an unambiguous written contract, the court's interpretation is a declaration of law, reviewable *de novo*. *LaSalle National Bank v. Service Merchandise Co.*, 827 F.2d 74, 78 (7th Cir.1987) (interpreting Illinois law); *Airline Stewards & Stewardesses Ass'n, Local 550 v. American Airlines*, 763 F.2d 875, 878 (7th Cir.1985) (same). The question whether a contract is ambiguous is also a question of law that we review *de novo*. *LaSalle National Bank*, 827 F.2d

at 78; *Airline Stewards & Stewardesses Ass'n*, 763 F.2d at 878. Here, the district court held that the contractual language was unambiguous. We agree; therefore, we proceed to review the court's interpretation of the letter of guaranty *de novo*.

The letter of guaranty states "[t]hat *upon shipment* of the merchandise ordered by McCord ... NAC will make payments to you of invoices for merchandise so shipped for amounts not exceeding $40,-000 in the aggregate, upon demand, if payment is not made by McCord according to the terms and conditions of the invoices covering said sale." (emphasis added). Curiously, the district judge did not discuss the language of the letter of guaranty. As we read this language, NAC's obligation to Bandag becomes enforceable upon Bandag's shipment of goods. We can conceive of no other reason for the explicit declaration that NAC promises to guarantee McCord's debts "upon shipment." If NAC had wished that the obligation not arise until the invoices themselves were due and payable, it could very easily have drafted the letter differently by inserting such language into the agreement. *See 349 West Ontario Bldg. Corp. v. Palmer Truck Leasing Co.*, 22 Ill.App.3d 467, 473–74, 317 N.E.2d 740, 745 (1974) (lease explicitly provided that liability for property taxes arose only when taxes were "due and payable"). It failed to do so, however. A reasonable reading of the contractual language indicates that the letter's reference to the "terms and conditions of invoices" explains the nature of McCord's primary obligation, not NAC's guaranty. Thus, at most, depending on the terms and conditions of the invoices, this language limits the time at which Bandag legitimately may demand payment. It does not, however, delay the onset of NAC's obligations until the invoic-

---

**2.** To the extent that C.J.S. is persuasive, two sections dealing with termination of a guaranty suggest that the district judge should have reached the opposite result. When a guaranty is terminated, either by revocation or by the death of the guarantor, the termination operates to preclude new liabilities from being created after termination but does not discharge liabilities already incurred during the life of the guaranty. The discussion specifically applies the

rule in cases in which the guaranteed debts do not fall due until after the expiration of the guaranties. This strongly suggests that guaranties are commonly understood to apply to debts arising during the guaranty period, but not due and payable until after termination. *See* 38 C.J.S. *Guaranty* §§ 36–37. Of course, the parties may alter this result contractually, *see id.* at § 35, but we see no indication that they have done so here.

es become due, nor does it relieve NAC of the obligations established "upon shipment." It is not the business of this federal appellate court to redraft the contracts of private parties and we refuse to do so here. *See Chicago, R.I. & P. R.R. v. Richmond, F. & P. R.R.*, 835 F.2d 682, 686 (7th Cir.1988); *Heller v. Equitable Life Assurance Society of the United States*, 833 F.2d 1253, 1260 (7th Cir.1987) (parties must not "rely on the courts to correct their own deficiencies in … drafting").

Further, the construction urged by NAC would invalidate the guaranty as the termination date approached. Ordinarily, Bandag provided goods to McCord on ninety days' credit. NAC and Bandag entered into the guaranty because Bandag would not continue to do this without security and NAC already held a lien on all of McCord's business assets. Therefore, the obvious purpose of the letter of guaranty was to allow Bandag to continue to sell goods to McCord without suffering insecurity (due to lack of legal recourse), at least for the first $40,000. However, under the construction urged by NAC, Bandag's sales to NAC would be guaranteed during the final ninety days of the guaranty period only if Bandag changed the terms of its invoices so that they would become due before the termination date. Otherwise, all of Bandag's sales to McCord in the last ninety days of the guaranty period would be unsecured by the guaranty. On the final day of the guaranty period, Bandag would be protected only if it demanded immediate payment. Of course, no security is necessary for deliveries made C.O.D., so this construction renders the guaranty itself useless as its termination date nears. Such a construction is unreasonable. *See, e.g., Louisville Manufacturing v. Welch*, 51 U.S. (10 How.) 461, 471, 13 L.Ed. 497 (1850); *Mamerow v. National Lead Co.*, 206 Ill. 626, 632–34, 69 N.E. 504, 506–07 (1903); *Best Brewing Co. v. Vinterum*, 67 Ill.App. 555, 559 (1896). NAC and Bandag entered into the letter of guaranty because NAC wanted Bandag to continue to supply its debtor, McCord. Bandag's desire for security clearly shows that the parties contemplated that Bandag's sales to McCord would be on

credit, and Bandag's subsequent sales to McCord were made in reliance on the guaranty. On these facts, NAC's proposed construction of the letter of guaranty is specious. *See Louisville Manufacturing Co.*, 51 U.S. (10 How.) at 471; *Mamerow*, 206 Ill. at 633–34, 69 N.E. at 507; *In re Klink's Estate*, 310 Ill.App. 609, 615, 35 N.E.2d 684, 687 (1941); and *cf.* Ill.Rev.Stat. ch. 26, para. 2–106 (Under Illinois's Uniform Commercial Code, "On 'termination' all obligations which are still executory on both sides are discharged but any right based on prior breach or performance survives.").

The distinction between the actual letter of guaranty at issue and the one conjured up by NAC is illustrated by two recent Illinois appellate cases interpreting lease provisions that allocated responsibility for property taxes on the leased property. In *First National Bank of Highland Park v. Mid-Central Food Sales, Inc.*, 129 Ill. App.3d 1002, 85 Ill.Dec. 4, 473 N.E.2d 372 (1984), the court interpreted the following provision: "Throughout the term of this Lease, Lessee shall pay when due all taxes, … together with any interest and penalties thereon, which are imposed or levied upon or assessed against the premises or any part thereof." *Id.* at 1005, 85 Ill.Dec. at 6, 473 N.E.2d at 374. The court held that the provision made the lessee liable for all taxes imposed during the term of the lease, even if they did not become due until after the lease expired. Thus, the lessee was not required to pay the taxes until they became due, but the duty to pay them in the future became fixed at the moment the taxes were assessed. *Id.* at 1009, 85 Ill.Dec. at 9, 473 N.E.2d at 377. The court distinguished *349 West Ontario Bldg. Corp. v. Palmer Truck Leasing Co.*, 22 Ill.App.3d 467, 317 N.E.2d 740 (1974), which reached the opposite result, because the lease in *349 West Ontario Bldg. Corp.* expressly conditioned tax liability on the tax becoming due and payable during the term of the lease. The lease in *349 West Ontario Bldg. Corp.* provided that: "Lessee further agrees to pay as additional rent … all general real estate taxes … which may be levied, assessed or imposed upon

said premises ... now due or accruing *and becoming due and payable during the term of this lease."* 349 West Ontario Bldg. Corp., 22 Ill.App.3d at 473-74, 317 N.E.2d at 745 (emphasis added). Thus, the court in *349 West Ontario Bldg. Corp.* found the lessee liable for only those taxes which both were assessed and became due during the term of the lease. *349 West Ontario Bldg. Corp.,* 22 Ill.App.3d at 474, 317 N.E.2d at 745. The letter of guaranty, as written, is closely analogous to the lease in *First National Bank of Highland Park;* it does not make NAC's liability conditional upon Bandag's invoices becoming due and payable, but "upon shipment." NAC would have us read the letter of guaranty in a manner analogous to the lease in *349 Ontario Bldg. Corp.* In the absence of similar language in the letter of guaranty, we decline to do so. As the lease in *349 West Ontario Bldg. Corp.* demonstrates, parties have little difficulty in delaying the assumption of obligations until the due date of those obligations when they choose to do so. NAC did not.

In summary, NAC urges that we accept a construction of the letter of guaranty that is contrary to its very language, the intent of the parties, and the decisions of Illinois courts. Because we find the proposed construction to be without legal basis under the applicable law of Illinois, the district court's decision was erroneous. We therefore reverse the judgment of the district judge and remand the case for entry of judgment in favor of Bandag in the amount of $40,000. Because NAC's obligation constitutes money due on a written instrument, Bandag also has established its right to statutory, prejudgment interest accruing from January 17, 1986, the date on which Bandag demanded payment pursuant to the letter of guaranty. See Ill.Rev. Stat. ch. 17, para. 6402 (prejudgment interest in suit on written instrument); *Art Press, Ltd. v. Western Printing Mach. Co.,* 852 F.2d 276, 278 (7th Cir.1988) (contract is "instrument in writing" within statute).

REVERSED.