THE FIRST NATIONAL BANK OF DES PLAINES, Trustee, *et al.*, Plaintiffs-Appellants, v. SHAPE MAGNETRONICS, INC., Defendant-Appellee.

First District (2nd Division)   No. 84—1851

Opinion filed July 23, 1985.

Edward S. Jackson and John August Cook, P.C., both of Chicago (John A. Cook and Mary J. Walsh, of counsel), for appellants.

Steck & Schofield, P.C., of Chicago (Richard E. Steck, of counsel), for appellee.

JUSTICE PERLIN delivered the opinion of the court:

Plaintiffs-lessors appeal from an order of the circuit court of Cook County which directed a verdict in favor of defendant-lessee in an action brought by plaintiffs to recover damages resulting from lessee's alleged breach of the covenant to repair contained in an industrial building lease entered into by the parties.

Prior to 1972 plaintiff James Bragg and Ted Maka were co-owners of both defendant Shape Magnetronics, Inc. (Shape or lessee), and the industrial building used by Shape. In 1972 Bragg and Maka ended their co-ownership of these interests; Bragg and his wife, plaintiff Evann Bragg, became sole owners of the building used by Shape and Maka became sole owner of Shape. The Braggs placed ownership of the building in the plaintiff land trust.

Shape had been using this building since 1970. Shape was engaged in the business of manufacturing transformers. At least some aspects of this business were admittedly "messy."

In 1974, Shape entered into a two-year lease with plaintiffs for the building here in issue. In 1976 the parties entered into a second two-year lease, and in 1978 they entered into a one-year lease which terminated in October 1979. After the termination of this third lease, Shape vacated the building.

Each of the leases entered into contained a clause which provided, in part:

"Lessee has examined and knows the condition of the premises and has received the same in good order and repair, *** lessee will yield up the Premises to Lessor, in good condition and repair, loss by fire and ordinary wear excepted ***."

The lease also granted lessor the right to "free access to the Premises for the purpose of examining" the building.

After Shape vacated the building, plaintiffs filed a two-count complaint contending that Shape failed to yield the building "in good condition and repair" and requesting $40,000 damages. Count I of the complaint alleged that "notwithstanding the form" of the leases entered into, it was the "intent" of the parties that each successive lease be an "extension" of the prior lease. Count I requested damages for breach of the covenant to repair under each of the three leases. Count II of the complaint sought damages under only the third, and final, lease.

Defendant moved to dismiss count I on the basis that none of the

leases indicated that it was an extension of a prior lease, that they were in fact separate leases and that when the allegations of a complaint contradict the exhibits upon which the allegations are based, the exhibits control. The court dismissed count I, and the case proceeded to trial on count II, the third lease.

Plaintiffs' sole witness at trial was Mr. Bragg. He testified that after Shape vacated the building he toured the premises and noted various damages to the building. He sent a letter to Maka listing those damages which Bragg believed Shape was required to repair under the lease. Bragg also took several photographs of various areas of the building to portray the extent of the damage. Some of these photos were admitted into evidence. Bragg also testified that he sought estimates regarding the cost of repairing portions of the building from tradespeople. These estimates totalled approximately $13,000.

On cross-examination Bragg repeatedly stated that he "did not know" when any of the damage to the building had occurred. He did not know whether any of the damages had occurred during the period when he and Maka were co-owners of both Shape and the building. It was unclear whether Bragg had viewed the premises at any time between 1974 and November 1979.

Plaintiffs sold the building in April 1980.

Maka, testifying on behalf of defendant, stated that "almost all" of the damages complained of by plaintiffs was due to ordinary wear and tear, and that some of the allegedly damaged portions of the building were in that condition prior to Shape entering into the lease with plaintiffs.

Following presentation of the evidence, the trial court granted defendant's motion for a directed verdict. Upon the trial court's denial of plaintiffs' post-trial motion, plaintiffs brought this appeal. They raise two issues: (1) Did the trial court err in granting defendant's motion for a directed verdict; and (2) did the trial court err in dismissing count I of the amended complaint?

■ A verdict should only be directed in those cases "in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504.) We believe that the directed verdict was in this instance properly entered.

■ ■ In an action for breach of a covenant to repair the lessor must prove: (1) breach of the covenant; and (2) resultant damages. To prove a breach of the covenant, the landlord must show that the leased premises were in a different and worse condition at the conclu-

sion of the lease than they were at the outset of the lease.

"When a tenant vacates an apartment, \*\*\*, he is required only to leave the premises in the same condition as they were when he first took possession. (See *Streeter v. Streeter*, 43 Ill. 155, 160-161.) If the premises are not left in that condition, normal wear and tear excepted, then the landlord has the right to hold the tenant liable for the costs of returning the premises to such condition so that they may be re-let." (*Pyramid Enterprises, Inc. v. Amadeo* (1973), 10 Ill. App. 3d 575, 579, 294 N.E.2d 713.)

Thus a plaintiff's initial burden is to introduce evidence of two different conditions of the premises.

"To recover under the terms of the sublease the plaintiffs were required to show that the condition in which the premises were returned to plaintiff Bruce was different from the condition when the subtenants took possession and that the difference amounted to compensable injury to the plaintiffs or either of them." *349 West Ontario Building Corp. v. Palmer Truck Leasing Co.* (1974), 22 Ill. App. 3d 467, 476, 317 N.E.2d 740.

In the instant case, while Bragg testified at length as to the condition of the building upon defendant's leaving, he repeatedly stated that he "did not know" when the damage to the building occurred. Nor did he testify as to the condition of the building .at the beginning of the lease. Since plaintiffs failed to introduce evidence of the condition of the building at the commencement of the lease, they failed to establish a *prima facie* case for breach of the covenant to repair, and the trial court properly directed a verdict for defendant.

■ Plaintiffs contend that they were not required to introduce any evidence of the condition of the building at the outset of the lease period. They argue that they could instead rely on the covenant in the lease providing that the premises were in "good order and repair" to establish the condition of the leasehold at the beginning in the lease period. We cannot agree. That description, standing alone, does not sufficiently describe the actual condition of the premises at the outset of the lease. That phrase, therefore, cannot be used as a standard or starting point for measuring the alleged damages to the building. See *Exchange National Bank v. Heller* (1975), 26 Ill. App. 3d 675, 325 N.E.2d 328.

The directed verdict was also proper in light of the evidence adduced pertaining to damages. Damages in these "covenant to repair" cases are "limited to actual losses arising from the breach [citation]." (*349 West Ontario Building Corp. v. Palmer Truck Leasing Co.*

(1974), 22 Ill. App. 3d 467, 477, 317 N.E.2d 740.) A plaintiff must establish a reasonable basis for computation of damages; they may not be awarded on the basis of speculation or conjecture. *Schoeneweis v. Herrin* (1982), 110 Ill. App. 3d 800, 443 N.E.2d 36.

■ Here, plaintiffs failed to specifically identify the cost of repairing those damages alleged to have been caused by defendant. Instead, Bragg testified to the repair costs for general areas of the building without linking those costs to specific damages alleged to have been caused by defendant.

> "[T]he plaintiffs' evidence does not establish their damages because the damaged areas described by [plaintiffs] were not isolated in the evidence of repairs ***. A review of the record reveals no instance where the specific element of damage caused by the [lessees] was specifically quantified in repair bills." *349 West Ontario Building Corp. v. Palmer Truck Leasing Co.* (1974), 22 Ill. App. 3d 467, 478, 317 N.E.2d 740.

■ The second issue raised by plaintiffs is whether the trial court erred in dismissing count I of the amended complaint. Count I alleged that "notwithstanding the form of" the leases, the second and third leases should be construed as "extensions" of the prior lease. However, the leases themselves, attached as exhibits, are clearly not lease "extensions" but a series of separate leases. Exhibits which conflict with allegations in a pleading negate those allegations. (*Ford v. University of Illinois Board of Trustees* (1977), 55 Ill. App. 3d 744, 371 N.E.2d 173.) Under such circumstances, the trial court properly struck count I of the complaint.

Moreover, we do not believe that plaintiffs suffered any prejudice from the dismissal of count I. Apparently it was plaintiffs' theory that if the leases were construed to be extensions, then the "good condition" in which the building was to be returned to plaintiffs would be that which existed in 1974 (the commencement of the first lease) rather than 1978 (the commencement of the third, and final, lease). However, the dismissal of count I did not preclude plaintiffs from introducing evidence of the condition of the building for any relevant period. And, as noted, plaintiffs failed to introduce any evidence of the actual "good" condition of the building for any period.

For these reasons, the order of the trial court is affirmed.

Order affirmed.

HARTMAN and BILANDIC, JJ., concur.