2023 IL App (1st) 230253-U

THIRD DIVISION
December 6, 2023

No. 1-23-0253

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

**IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT**

| | | |
|---|---|---|
| 4600 ROOSEVELT, LLC, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | No. 21 L 6547 |
| | ) | |
| COOK COUNTY, | ) | Honorable |
| | ) | Mary Colleen Roberts, |
| Defendant-Appellee. | ) | Judge, Presiding |

JUSTICE D. B. WALKER delivered the judgment of the court.
Justice Lampkin and Justice R. Van Tine concurred with the judgment.

**ORDER**

¶ 1     *Held*: We reverse the dismissal of plaintiff's complaint and remand for further proceedings where defendant's affirmative matter merely refuted the factual allegations in the complaint, and questions of fact existed regarding plaintiff's breach of contract claim.

¶ 2     Plaintiff 4600 Roosevelt, LLC appeals the trial court's dismissal of its breach of contract complaint against defendant Cook County pursuant to section 2-619(a)(9) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(9) (West 2020)). On appeal, plaintiff contends that (1) the trial court improperly dismissed its complaint pursuant to section 2-619(a)(9) where defendant failed to present affirmative matter to defeat plaintiff's claim; and (2) the trial court erred in finding

the lease invalid and unenforceable. For the following reasons, we reverse and remand for further proceedings.

¶ 3                                    I. BACKGROUND

¶ 4      Plaintiff is the landlord of commercial property located at 4600 Roosevelt Road in Hillside, Illinois. The building consists of approximately 40,372 square feet of rentable space.

¶ 5      In 2018, defendant signed an agreement to lease approximately 22,598 square feet on the first floor of the building. The lease provided that the rentable square footage of the premises "shall be certified by Landlord's architect within fifteen (15) days following the Commencement Date and the certified rentable square footages shall be binding on the parties and confirmed in the Commencement Date Certificate to be executed by the parties along with *** the Annual Rent based on such certified rentable square footages." The lease contained a chart listing the annual rent per square foot for each year up to ten years. Relevant to this appeal, the lease also provided:

> "2.1 The Term of this Lease shall begin on the Commencement Date and shall terminate on the Termination Date, unless sooner terminated by the provisions of this Lease. Landlord shall tender possession of the Premises with all the Landlord Improvements to be performed by Landlord pursuant to Exhibit B to this Lease substantially completed, as determined by Landlord's architect or general contractor. *** Tenant shall, at Landlord's request, execute and deliver a Commencement Date Certificate provided by Landlord in the form of Exhibit C attached hereto, setting forth the actual Commencement Date, Termination Date and rent and any other matters specified on said Exhibit C. *** In no event shall Tenant be liable for the payment of Rent until Landlord has tendered possession of the Premises to Tenant."

                                              ***

2.3 Except as provided below, Landlord shall be responsible for all costs and expenses to perform the Landlord Improvements ***; Notwithstanding the foregoing, in the event that (a) there are any changes to the scope or details of the Landlord Improvements (as reflected on attached Exhibit B) that are requested or approved by Tenant following the execution of this Lease or (b) the Landlord Improvement Costs exceed the Maximum Landlord Contribution, Tenant shall reimburse Landlord for any additional Landlord Improvement Costs incurred by Landlord as a result thereof ***.

***

17.1 An "Event of Landlord Default" shall be deemed to exist under this Lease if Landlord shall breach, or fail to keep, observe or perform any of the terms, conditions or covenants on the part of Landlord herein to be kept, observed and performed for more than thirty (30) days after written notice thereof is given by Tenant to Landlord specifying the nature of such default ***.

17.2 If an Event of Landlord Default shall occur and continue, Tenant shall be entitled to bring an action for damages or equitable relief. ***

***

19.1.1 If Tenant defaults, Landlord may, at its election, terminate this Lease by providing thirty (30) days written notice of termination to Tenant."

¶ 6 The lease agreement included Exhibit B, a two-page list of specific landlord improvements to accommodate defendant's occupation of the premises, including carpentry, plumbing and electrical work, as well as painting, remodeling of bathrooms, and installation of new flooring and hardware.

¶ 7 Three "Contract and EDS Execution Page[s]," signed by plaintiff and dated May 31, 2018, were attached to the lease. Also attached was a "Cook County Signature Page" stating that "[o]n behalf of the County of Cook, a body politic and corporate of the State of Illinois, this contract is hereby executed by" Toni Preckwinkle as Cook County Board of Commissioners President, and David Orr as Cook County Clerk. The document was signed by Preckwinkle and Orr on June 20, 2018. A second "Cook County Signature Page," signed on June 7, 2018 by the Cook County Health and Hospital System's Deputy CEO of Finance and Strategy, was also attached.

¶ 8 On June 25, 2021, plaintiff filed a breach of contract complaint against defendant. Attached to the complaint were the lease and its exhibits. In the complaint, plaintiff alleged that the parties "executed a ten-year and one-month lease *** wherein [defendant] agreed to lease the first floor of a large building *** located at 4600 Roosevelt Road in Hillside, Illinois." The complaint further alleged that after plaintiff began making "the Landlord Improvements, including demolition of the office space, [defendant] informed [plaintiff] that it wished to make extensive modifications of the Landlord Improvements, which would substantially increase their cost." Since defendant would be liable for the added costs, plaintiff "halted all improvement efforts and began negotiating the new scope of Landlord Improvements." Plaintiff alleged that the changes "were of such a nature that continuing construction according to the original Landlord Improvement specifications would be wasteful ***" and defendant, not plaintiff, "would be responsible for any overages under the Lease."

¶ 9 After several months of negotiations, defendant prepared a proposed letter agreement that memorialized the "reallocation of construction work to be performed" on the premises. The letter provided that defendant would "be solely responsible" for the costs of the additional work. However, discussion between the parties "began to lag, as [defendant] seemed less and less

interested in reaching a deal on the modifications it was requesting." Plaintiff's counsel reached out to defendant, requesting that the parties finalize the modifications so plaintiff could complete construction and begin to collect rent. Defendant ultimately "went dark" and, after August 1, 2019, it did not respond to any issues related to the proposed modifications.

¶ 10    On September 18, 2019, defendant mailed a default notice to plaintiff because plaintiff had not completed the landlord improvements as set forth in the lease. Plaintiff responded that "it was ready and willing to perform the Landlord Improvements according to the Lease or to continue to negotiate the modifications requested by" defendant. Defendant, however, "announced it was going [in] another direction."

¶ 11    The complaint alleged that defendant

"breached its obligations under the Lease, including but not limited to terminating or otherwise abandoning the Lease in violation of its express terms; failing to provide the requisite information sufficient to permit construction of the Landlord Improvements after announcing a change in scope or details of the Landlord Improvements; and failing to perform its obligations under the Lease in accordance with the implied covenants of good faith and fair dealing."

Plaintiff requested damages "to be proven at trial," as well as attorney fees and costs.

¶ 12    Defendant filed a section 2-619(a)(9) motion to dismiss the complaint. Therein, defendant argued that plaintiff never completed the Landlord Improvements and, as a result, defendant never had possession of the premises. Since possession was not tendered, the Lease never "commenced," and no commencement date was thereby "triggered." Without a commencement date, defendant's obligation to pay rent "never accrued" and, as such, defendant did not breach the lease nor was it liable for any damages.

¶ 13    Defendant attached to the motion its June 4, 2020 "Termination Letter" to plaintiff. The letter represented defendant's "official termination of the lease agreement." The letter explained that plaintiff was "in default pursuant to Section 17 of the lease" because construction "was not started/completed in a timely manner." The letter further stated that "a notice of delay letter was issued on May 16, 2019 detailing the default and providing 30 days to cure said default. Failure to cure within the 30-day period triggered [defendant's] decision to terminate the lease."

¶ 14    The trial court granted defendant's motion to dismiss. It noted that to recover for breach of contract, plaintiff must establish the following elements of the claim: (1) existence of an enforceable contract; (2) plaintiff's performance under the contract; (3) a breach by defendant; and (4) resulting injury to plaintiff. The court found that the lease "on its face is unenforceable" because "the tendering of premises was a condition precedent to Defendant's obligations 'activating.' " The court further ruled that since defendant never had possession of the premises, the lease "never commenced and thus never became effective and is therefore unenforceable." Furthermore, "because possession was not tendered," plaintiff did not perform its obligations under the lease. Defendant did not breach the lease because its "obligation to pay rent only accrued when possession was tendered, and the Commencement Date started the Lease and the obligations under it. Thus, [defendant] does not owe rent to Plaintiff." The court determined that plaintiff could not meet all of the elements required to establish a breach of contract. Therefore, its claim could not "be sustained."

¶ 15    Plaintiff filed a motion to reconsider which the trial court denied. In its order, the court reiterated that plaintiff's complaint failed to establish the existence of an enforceable contract. It found that because the commencement date never occurred, "the Lease never became

enforceable." Also, because plaintiff never tendered possession of the premises to defendant, plaintiff failed to perform its obligations under the lease.

¶ 16    Plaintiff filed this appeal.

¶ 17                                    II. ANALYSIS

¶ 18    We first address defendant's contention that the "Nature of the Case" section in plaintiff's brief failed to comply with Supreme Court Rule 341(h)(2) (eff. Oct. 1, 2020), where it was argumentative and lengthy, raised issues for the first time on appeal, and did not contain any information required by the rule. Defendant requests that we strike this portion of plaintiff's brief. Defendant further contends that plaintiff's statement of facts was improperly argumentative.

¶ 19    The supreme court rules governing the content and format of appellate briefs are mandatory. *Voris v. Voris*, 2011 IL App (1st) 103814, ¶ 8. However, where the violations "are not so flagrant as to hinder or preclude review, the striking of a brief in whole or in part may be unwarranted." *Hurlbert v. Brewer*, 386 Ill.App.3d 1096, 1101 (2008). Although we do not condone a party's failure to abide by these rules, we find that the violations alleged by defendant do not hinder our review. Rather than striking portions of plaintiff's brief, we will instead disregard any improper assertion. See *id.*

¶ 20    We next address plaintiff's contention that the trial court improperly dismissed its complaint pursuant to section 2-619(a)(9) of the Code. Plaintiff argues that defendant's motion to dismiss failed to assert affirmative matter defeating plaintiff's claim. Accordingly, there was no basis on which to dismiss plaintiff's complaint under that provision.

¶ 21    In moving to dismiss under section 2-619(a)(9), defendant admits the legal sufficiency of plaintiff's cause of action but argues that affirmative matter outside the face of the complaint "either negates an alleged cause of action completely or refutes crucial conclusions of law or

conclusions of material fact unsupported by allegations of specific fact contained or inferred from the complaint ***." (Internal quotation marks omitted.) *Smith v. Waukegan Park District*, 231 Ill. 2d 111, 121 (2008). " 'Affirmative matter' means some kind of defense 'other than a negation of the essential allegations of the plaintiff's cause of action.' " *Id.* at 120-21 (quoting *Kedzie and 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 115 (1993)). We review a section 2-619 dismissal *de novo*. *Sandholm v. Kuecker*, 2012 IL 111443, ¶ 55.

¶ 22    Plaintiff's complaint alleged breach of contract based on the lease. To state a claim for breach of contract, plaintiff must sufficiently plead all of the following elements: (1) the existence of a valid, enforceable contract; (2) performance by plaintiff; (3) a breach by defendant; and (4) damages resulting from the breach. *Gore v. Indiana Insurance Co.*, 376 Ill. App. 3d 282, 286 (2007).

¶ 23    Regarding the first element, plaintiff's complaint alleged that the parties executed the lease in 2018. The lease contained signature/execution pages signed by plaintiff and defendant in 2018. Defendant's signature pages explicitly stated that by signing the lease, the Cook County President, Clerk, and Deputy CEO of Finance and Strategy executed the lease on behalf of defendant. Generally, once a written contract or lease is executed by the parties, it is considered binding and enforceable. *Sterdjevich v. RMK Management Corp.*, 343 Ill. App. 3d 1, 14–15 (2003). In its motion to dismiss, defendant did not dispute that the parties executed the lease.

¶ 24    Instead, defendant argued that it had terminated the lease because plaintiff failed to start or complete construction "in a timely manner," and that the lease never commenced, and thus was not a valid and enforceable contract on which plaintiff could base its breach of contract claim. Defendant attached the termination letter purporting to be affirmative matter defeating plaintiff's claim. The letter, however, merely disputed plaintiff's allegation that there was an enforceable

contract, which is one of the essential elements of plaintiff's breach of contract claim. Such evidence does not constitute affirmative matter under section 2-619(a)(9). See *Smith*, 231 Ill. 2d at 121-22 (finding that the defendant did not present affirmative matter supporting its section 2-619 motion to dismiss where the evidence merely raised a factual dispute in order to negate the essential elements of the plaintiff's claim).

¶ 25 Additionally, the issue of whether an enforceable contract exists in this case involves disputed questions of fact. In its motion to dismiss, defendant argued that the lease never commenced because plaintiff failed to complete the landlord improvements and tender possession of the premises to defendant. According to plaintiff, however, defendant's conduct prevented plaintiff from completing the improvements. Plaintiff's complaint alleged that plaintiff began making landlord improvements set forth in Exhibit B of the lease, "including the necessary demolition of the office area to fit [defendant's] specifications," but after doing so, defendant informed plaintiff that "it wished to make extensive changes" to the previously agreed upon list of improvements. Consequently, plaintiff halted construction of the premises and the parties began negotiations on the modifications. Plaintiff alleged that the delay in construction was caused by defendant's "request to modify the Landlord Improvements and its refusal to negotiate in good faith on its requested modifications."

¶ 26 "Good faith between contracting parties requires one vested with contractual discretion to exercise it reasonably and not arbitrarily or capriciously *** , and parties to a contract impliedly promise not to do anything which will destroy or injure the other party's right to receive the fruits of the contract." (Internal citation omitted.) *Vincent v. Doebert*, 183 Ill. App. 3d 1081, 1090 (1989). Whether a party has satisfied its good faith obligations is a question of fact and depends upon the nature of the undertaking for which the commitment was made. *Grant v. Board of Education of*

*City of Chicago*, 282 Ill. App. 3d 1011, 1025 (1996). By alleging that defendant properly terminated the lease, defendant's motion disputed plaintiff's fact-based claim that defendant acted in bad faith. Such a motion is more appropriately filed as a summary judgment motion, or the issue should be resolved at trial. *Doe v. University of Chicago Medical Center*, 2015 IL App (1st) 133735, ¶ 41.

¶ 27    In granting defendant's motion to dismiss, the trial court cited *Regency Commercial Associates, LLC v. Lopax, Inc.*, 373 Ill. App. 3d 270 (2007), and *349 West Ontario Building Corp. v. Palmer Truck Leasing Co.*, 22 Ill. App. 3d 467 (1974), as support. These cases are distinguishable, however, because the trial court rendered judgment after an evidentiary hearing on a declaratory judgment action (*Lopax*), and after a trial (*349 West Ontario*). In neither case did the court dismiss the complaint pursuant to section 2-619(a)(9) of the Code.

¶ 28    It appears from the trial court's order that it treated defendant's 2-619(a)(9) motion to dismiss as a motion for summary judgment. The court found that plaintiff failed to perform its obligations and tender possession of the premises to defendant. The court thus determined that the lease was "unenforceable" because defendant never had possession of the premises and, as a result, the lease "never commenced and thus never became effective." It further found that defendant did not breach the lease where "the tendering of premises was a condition precedent to Defendant's obligations 'activating' " under the lease. The court concluded that plaintiff's claim "cannot be sustained" because it had not satisfied all of the elements of a breach of contract action.

¶ 29    Although similar in some respects, "there are critical differences between a section 2-619 motion and a motion for summary judgment." *Doe*, 2015 IL App (1st) 133735, ¶¶ 42-43. Importantly, a section 2-619 motion to dismiss concedes that the factual allegations in the complaint state a viable cause of action. *Hodge*, 156 Ill. 2d at 115. Therefore, where defendant's

motion to dismiss "does nothing more than refute the well-pleaded allegations of the complaint, the complaint trumps that evidence, and dismissal is improper." *Doe*, 2015 IL App (1st) 133735, ¶ 43. A section 2-619 motion to dismiss " 'is not a proper vehicle to contest factual allegations; nor does it authorize a fact-based 'mini-trial' on whether plaintiff can support [its] allegations.' " *Id.* (quoting *Reynolds v. Jimmy John's Enterprises, LLC*, 2013 IL App (4th) 120139, ¶ 42).

¶ 30    We find that the trial court erred in granting defendant's section 2-619(a)(9) motion to dismiss where defendant's affirmative matter merely disputed factual allegations in plaintiff's complaint and questions of fact must be resolved. Accordingly, we reverse the trial court's judgment and remand for further proceedings. See *Smith*, 231 Ill. 2d at 122.

¶ 31                                    III. CONCLUSION

¶ 32    For the foregoing reasons, we reverse the judgment of the trial court and remand for further proceedings.

¶ 33    Reversed and remanded.